IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

**MEMPHIS CENTER FOR**
**INDEPENDENT LIVING,**

                  **Plaintiff,**

v.                                                                    No. 2:09-cv-02121-STA-cgc

**WOODGLEN VILLAGE APARTMENTS**
**PARTNERSHIP, BRUCE LARSON, CAROMA**
**CONSTRUCTION COMPANY INC., READY**
**ARCHITECT ASSOCIATION, MCCASKILL**
**& ASSOCIATES,**

                  **Defendants.**

**REPORT AND RECOMMENDATION ON DEFENDANT**
**CAROMA CONSTRUCTION COMPANY, INC.'S  MOTION TO DISMISS**

**REPORT AND RECOMMENDATION ON DEFENDANTS WOODGLEN**
**APARTMENT PARTNERSHIP AND BRUCE LARSON'S MOTION TO DISMISS**

Before the Court are Defendant Caroma Construction Company, Inc.'s ("Caroma") Motion to Dismiss (D.E. #15) and Defendants Woodglen Apartment Partnership ("Woodglen") and Bruce Larson's ("Larson") Motion to Dismiss (D.E. #16).  The instant motions were referred to United States Magistrate Judge Charmiane G. Claxton for a Report and Recommendation. (D.E. #24). For the reasons set forth herein, the Court RECOMMENDS that Caroma's Motion to Dismiss be GRANTED and Woodglen and Larson's Motion to Dismiss be GRANTED.  Further, the Court RECOMMENDS that Plaintiff's request for leave to amend the Complaint be DENIED, as Plaintiff has neither proposed amendments nor specified the proposed substance of the amendments.

**I. Introduction**

On February 27, 2009, Plaintiff Memphis Center for Independent Living ("MCIL") filed its Complaint for Declaratory Relief, Injunctive Relief, and Damages alleging violations of the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, ("FHA") and the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*, ("ADA"). The Complaint, as amended on April 6, 2009,[1] alleges that Defendants unlawfully designed and constructed Woodglen in a manner that does not comply with the ADA or FHA. Am. Compl. ¶¶ 13-16. Specifically, MCIL asserts that Woodglen does not have a pedestrian accessible route from the street into the apartment complex, that it does not have pedestrian walkways, that there is no pedestrian access to the playground, that there is no pedestrian access to the dumpster, and that the clubhouse, rental offices and other public accommodations of the apartment complex are not readily accessible to individuals with disabilities. Id.¶¶ 13-16, 32-33.

As a direct and proximate result of these violations, MCIL asserts that Defendants "have caused and continue to cause harm to . . . MCIL by frustration of its mission to advance and secure equal opportunity in housing for all persons and by the diversion of its scarce resources to investigation of and counteraction to the discriminatory acts of Defendants." Id. ¶ 24, 34. MCIL conclusorily states in the Amended Complaint, without citation to any supporting authority, that "[c]ourts have held that advocacy groups like MCIL having standing to bring an action for violations of the Fair Housing Act or the Americans with Disabilities Act." Id. ¶ 4.

---

[1] The Court notes that MCIL's Amended Complaint was filed without leave of court and without the opposing party's written consent in violation of Fed. R. Civ. P. 15(a)(2). However, the Amended Complaint contains only administrative amendments, such as a new address for Woodglen and the removal of minor typographical errors, and does not contain any new factual bases or legal claims that are pertinent to the analysis of the issues presented in the instant motions.

## II. Legal Standard

A motion to dismiss for lack of standing may be considered under either Rule 12(b)(1) or Rule 12(b)(6), see, e.g. In re Alliance Leading Corp. v. IBM, 2007 WL 5598446 (Bankr. M.D. Tenn. 2007); In re Dublin Securities, Inc., 197 B.R. 66, 69 (S.D. Ohio 1996), and Defendants have relied upon both 12(b)(1) and 12(b)(6) in their motions to dismiss.  A Rule 12(b)(1) motion which attacks a claim for lack of jurisdiction over the subject matter on its face requires that the court accept the non-moving party's allegation of facts as true.  DLX, Inc. v. Kentucky, 381 F.3d 511, 516 (6th Cir.2004). Where subject matter jurisdiction is challenged, the party asserting jurisdiction bears the burden of establishing jurisdiction.  Moir v. Greater Cleveland Regional Transit Auth., 895 F.2d 266, 269 (6th Cir.1990). Further, "the plaintiff, as the party invoking federal subject matter jurisdiction, has the burden of persuading the court that all of the requirements necessary to establish standing to bring the lawsuit have been met." Courtney v. Smith, 297 F.3d 455, 459 (6th Cir.2002). The Court must be satisfied the jurisdictional and standing requirements are met before addressing the substance of Plaintiff's claims on the merits.

In evaluating a complaint under Rule 12(b)(6). which challenges the Complaint for failure to state a claim upon which relief may be granted, the Court also must accept as true all of plaintiff's allegations and resolve all doubts in plaintiff's favor. See Craighead v. E.F. Hutton & Co., 899 F.2d 485, 489 (6th Cir.1990).  This does not mean, however, that the Court must accept the presumptions or legal conclusions relied upon by the plaintiff to justify the claim. Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir.1987). But, the Court should not dismiss a complaint unless it appears beyond doubt that plaintiff cannot prove any set of facts in support of his claims that would

entitle him to relief. See Craighead, 899 F.2d at 489.

### III. Analysis

The sole issue presented in the instant motions is whether MCIL has standing to pursue the claims asserted in its Amended Complaint. The United States Court of Appeals for the Sixth Circuit has set forth the following comprehensive analysis for a trial court to determine whether standing is proper:

> Standing is the threshold question in every federal case. The Supreme Court has stated that the standing requirement limits federal court jurisdiction to actual controversies so that the judicial process is not transformed into a vehicle for the vindication of the value interests of concerned bystanders. To satisfy Article III's standing requirement, a plaintiff must have suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; the injury must be fairly traceable to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury. Hence, the irreducible minimum constitutional requirements for standing are proof of injury in fact, causation and redressability. A plaintiff bears the burden of demonstrating standing and must plead its components with specificity.[2]

Coal Operators & Assoc. v. Babbitt, 291 F.2d 912, 915-16 (6th Cir. 2002) (internal quotations and citations omitted). In reviewing a determination of standing, a court must consider the complaint and any materials submitted in connection with the issue of standing. Pedreira v. Kentucky Baptist Homes for Children, Inc., — F.3d —, No. 08-5538, 2009 WL 2707226, at *5 (6th Cir. Aug. 31, 2009) (quoting Warth v. Seldin, 422 U.S. 490, 501 (1975)).

The first prong of Article III's constitutional standing requirements is that the plaintiff must

---

[2] In addition to the Article III requirements for constitutional standing, certain statutory claims require the plaintiff to establish prudential standing. See Coal Operators & Assoc. v. Babbitt, 291 F.2d 912, 915-16 (6th Cir. 2002). In FHA actions, the Sixth Circuit has held that "Congress intended standing . . . to extend to the full limits" of Article III, and that the courts "accordingly lack the authority to create prudential barriers to standing in suits brought under that section." Havens Realty Corp. v. Coleman, 455 U.S. 363, 372-73 (1982). The parties dispute whether Congress or the Sixth Circuit requires that ADA claims meet prudential standing requirements; however, as the Court need not make any determination regarding the prudential requirements for either the FHA or ADA claims in its Report and Recommendation on the instant motions, the Court declines to address this issue.

allege an injury-in-fact. Coal Operators, 291 F.2d at 915-16. This requires "an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). An organization can meet the injury-in-fact requirement when a violation (1) caused the organization to divert resources from other projects or devote additional resources to a particular project in order to combat the alleged discrimination and (2) frustrated the organization's mission. Hooker v. Weathers, 990 F.2d 913, 915 (6th Cir. 1993); Housing Opportunities Made Equal, Inc. v. Cincinnati Enquirer, Inc., 943 F.2d 644, 646 (6th Cir. 1991). "Such concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests." Id. at 379. In the Sixth Circuit, an organization must show some diversion of resources that is independent of the costs of litigation, although costs of pre-litigation investigations may form the basis for standing. Hooker, 990 F.2d at 915; Housing Opportunities, 943 F.2d at 646. The Sixth Circuit has referred to the requirements as a "lenient approach," but has likewise "interpreted the standard narrowly." Fair Housing Council, Inc. v. Village of Olde St. Andrews, Inc., 210 Fed. Appx. 469, 475 (6th Cir. 2006).

In the instant case, the Amended Complaint states that the injury to MCIL has been a "frustration to advance and secure equal opportunity in house for all persons and by the diversion of its scarce resources to investigation of and counteraction to the discriminatory acts of Defendants." Am. Compl. ¶¶ 24, 34. However, the Amended Complaint does not clearly assert whether any of the alleged injuries sustained by the investigation and counteraction are independent of the costs of the litigation. As this is required by the Sixth Circuit to evidence an injury-in-fact and as the Court must narrowly interpret this standard, the Court finds that the Amended Complaint

does not contain a sufficient factual basis to determine that MCIL meets the jurisdiction prerequisite of Article III standing.

Because the Amended Complaint fails to allege a sufficient injury-in-fact to establish MCIL's standing in the instant case, the Court must look to "any materials submitted in connection with the issue of standing." See Pereira, 2009 WL 2707226, at *5. In this case, MCIL's Response contains a limited discuss of its investigation and counteraction of the alleged violations:

> Plaintiff conducted an investigation of Woodglen Village to ensure that . . . the apartment complex was designed and constructed in compliance with the Fair Housing Act and ADA, including the omission of pedestrian walkways within the complex and failure to design and construct rental offices that are readily accessible. Plaintiff's investigation into Defendants' compliance with the Fair Housing Act and the ADA, as well as its efforts to counteract Defendants' non-compliance with the Fair Housing Act and the ADA, caused them to divert significant monetary and human resources from other programs.

Resp. at 6-7 (quoting Am. Compl. ¶¶ 13-16, 24, 32-34). MCIL further asserts that the "impetus behind the diversion was not to manufacture this lawsuit, but rather to promote Plaintiff's mission of 'ensuring that people with disabilities have the fullest access to and enjoyment of rental housing as required by law.'" Resp. at 7 (quoting Am. Compl. ¶¶ 4, 24). Despite this additional discussion of the investigation and counteraction, it provides no further factual basis for the Court's determination that the purported injury-in-fact sustained by MCIL was independent of the litigation, as explicitly required by the Sixth Circuit to meet Article III's jurisdictional requirements.

Finally, MCIL cites several cases supporting its position that investigating and counteracting the alleged violations is sufficient for standing under the FHA and ADA. However, the Court finds that these cases must be distinguished from the instant case. First, in Hooker v. Weathers, 990 F.2d 913 (6th Cir. 1993), the court held that an organization that works to eliminate discriminatory housing practices had standing to pursue the claims of aggrieved individuals. However, in Hooker,

6

the plaintiff filed an affidavit detailing precisely what expenses the organization undertook to investigate the claims before commencing litigation. Id. at 914. Therefore, the Hooker court was able to determine that the organization could "establish standing by alleging a concrete and demonstrable injury including an injury arising from a purportedly illegal activity that increases the resources the group must devote to programs independent of its suit challenging the action." Id. at 915 (internal quotations and punctuation omitted). Yet this case is distinguishable from the present action, as the Court has no factual basis for the nature and scope of MCIL's actions and MCIL has not provided any allegations that the alleged injury was independent of the instant litigation.

Likewise, in Housing Opportunities Made Equal, Inc. v. Cincinnati Enquirer, Inc., 943 F.2d 644, 646 (6th Cir. 1991), a fair housing organization brought an action against a newspaper alleging that a "layout of advertisements which depict models virtually all of whom are white even though independently submitted by various real estate organizations or their agents, when taken in the aggregate, sends a discriminatory message." Id. at 646. The organization alleged that the advertisements has "deterred potential renters from seeking housing at advertised complexes" and that the organization has had to "devote resources to investigate and negate the impact of these advertisements." Id. Thus, in Housing Opportunities, the organization alleged that renters were in fact deterred by these advertisements, thereby causing harm to variety of aggrieved parties. The Sixth Circuit concluded that decreases in rentals due to allegedly unlawful advertisements is the type of injury-in-fact contemplated by Article III because it is independent of the expenses necessary to pursue litigation. However, MCIL does not allege how the any funds invested in "investigating and counteracting" the alleged violations were expended independently of the instant litigation.

In sum, the Sixth Circuit has explicitly required that the plaintiff bears the burden of

demonstrating standing, and the plaintiff "must plead its components with specificity." Coal Operators & Assoc. v. Babbitt, 291 F.2d at 916. Further, the Sixth Circuit has required a plaintiff to "show some injury that it independent of the costs of litigation." Fair Housing Council, 210 Fed. Appx. at 475. The Sixth Circuit has mandated that the standard must be interpreted narrowly. Id. Accordingly, the Court finds that MCIL has failed to plead with specificity that it has sustained an injury-in-fact independent of the costs of litigation in order to meet the jurisdictional prerequisites to pursue the FHA and ADA claims on behalf of its organization. Thus, the Court RECOMMENDS that Caroma's Motion to Dismiss be GRANTED and Woodglen and Larson's Motion to Dismiss be GRANTED.

In the alternative, MCIL requests that the Court consider its request for leave to amend the complaint to assert additional factual bases to satisfy the standing requirement. Generally, leave to amend "shall be freely granted when justice so requires." Fed. R. Civ. P. 15(a). Yet the rule does not allow leave in all cases, and a court may deny leave if an "apparent or declared reason" exists. Foman v. Davis, 371 U.S. 178, 230 (1962). In this case, MCIL did not propose any amendment to the complaint for the Court's consideration. Further, MCIL did not elaborate in any way as to what the substance of the proposed amendments would be and how the proposed amendments would establish that MCIL has appropriate standing to pursue the instant claims. On the contrary, the record is devoid of any explanation as to how MCIL would like to amend its pleadings to establish standing. Without any proposed amendment, summarization of the substance of a proposed amendment, or reference to the nature of the proposed amendment, the Court has no bas on which is to determine whether leave to amend is appropriate. Accordingly, the Court RECOMMENDS that the request for leave to amend be DENIED.

## IV. Conclusion

For the reasons set forth herein, the Court RECOMMENDS that Caroma's Motion to Dismiss be GRANTED and Woodglen and Larson's Motion to Dismiss be GRANTED. Further, the Court RECOMMENDS that Plaintiff's request for leave to amend the Complaint be DENIED.

**IT IS SO ORDERED** this 19th day of October, 2009.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN TEN (10) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT.  28 U.S.C. § 636(b)(1)(C).  FAILURE TO FILE THEM WITHIN TEN (10) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**